290 N.E.2d 64 (1972)
Warren B. STURRUP, by His Guardian and Next Friend, Lamount H. Sturrup, Plaintiff-Appellant,
v.
Robert M. MAHAN, Principal of University Junior-Senior High School, Phil N. Eskew, Commissioner of the Indiana High School Athletic Association, Defendants-Appellees.
No. 172A33.
Court of Appeals of Indiana, Third District.
December 13, 1972.
Rehearing Denied February 7, 1973.
David S. McCrea, McCrea & McCrea, Bloomington, for appellant.
Harold J. Bell, Mark E. Bell, Bell & Bell, Indianapolis, for appellee Phil N. Eskew *65 and Indiana High School Athletic Assn.
Len E. Bunger, Snyder, Bunger, Cotner, Harrel & Robertson, Bloomington, for appellee Robert M. Mahan.
HOFFMAN, Chief Judge.
The issue presented by this appeal is whether the denial of a preliminary injunction by the trial court was erroneous. The preliminary injunction was sought for the purpose of restraining the Indiana High School Athletic Association (IHSAA) acting by and through its Commissioner, Phil N. Eskew, and the principal of University Junior-Senior High School, Robert M. Mahan, from declaring appellant-Warren B. Sturrup ineligible from participation in varsity athletics.
The facts of this case may be briefly summarized as follows:
Warren B. Sturrup lived in Miami, Florida, and attended Miami Palmetto High School during the 1970-1971 school year. During the summer of 1971, Sturrup moved to Bloomington, Indiana, because of the demoralizing and detrimental conditions of his home and school environment.
In Bloomington, Indiana, Sturrup lives with his brother who, prior to the institution of the instant action, was appointed legal guardian of Warren B. Sturrup by the Monroe Circuit Court. During the summer of 1971, prior to his junior year, Sturrup enrolled in University Junior-Senior High School and was certified eligible to play varsity football.
On September 27, 1971, Robert M. Mahan, the principal of University Junior-Senior High School, wrote a letter to Warren Sturrup's guardian informing him that Mahan had conferred with Phil N. Eskew, Commissioner of the IHSAA and had reviewed "Warren's eligibility case." Mahan then declared Warren Sturrup ineligible to participate in interscholastic athletics for the 1971-72 school year.
Sturrup, by his guardian and next friend, filed his application for an injunction and his application for a preliminary injunction pending trial on the permanent injunction. Following a change of venue, trial was to the court which denied the application for a preliminary injunction. Sturrup timely filed his motion to correct errors which was overruled by the trial court and this appeal followed.

I.
The first issue raised by Sturrup is whether he qualifies for the exceptions to the IHSAA rule making a student ineligible for a one-year period who transfers to a new school without a corresponding change in his parent's residence. Sturrup contends that he qualifies for such exceptions to the IHSAA rules for the following reasons:
1. His move was necessary as a result of unavoidable circumstances; and
2. He established a new residence with a legally appointed guardian.
The record before us indicates that the principal of University Junior-Senior High School declared Sturrup ineligible after conferring with IHSAA Commissioner Phil N. Eskew. The record before us also indicates that Eskew conferred by telephone with the Board of Control of the IHSAA concerning the eligibility of Sturrup. Phil N. Eskew testified, on direct examination, as follows:
"A. The phone conversations, this was the decision: According to Rule 22, Warren Sturrup cannot be considered eligible as to resident until he has been enrolled in University High School for one calendar year. If and when additional pertinent evidence is received by the Board of Control, they will review the case. That was October the 7th."
We conclude that the Board of Control considered the facts before it, and did not believe that Sturrup is eligible for participation in interschool athletics.
*66 The IHSAA is a voluntary association open to all public, private, parochial and institutional high schools of the State of Indiana. The authorities are legionary that courts will not interfere with the internal affairs of such voluntary associations absent mistake, fraud, collusion, arbitrariness or invasion of personal or property rights. State ex rel. I.H.S.A. Assn. v. Lawrence C.C. (1959), 240 Ind. 114, 162 N.E.2d 250; Scott v. Kilpatrick (1970), 286 Ala. 129, 237 So.2d 652; Sanders v. Louisiana High School Athletic Ass'n. (La. App. 1970), 242 So.2d 19; Quimby v. School District No. 21 of Pinal County (1969), 10 Ariz. App. 69, 455 P.2d 1019; Marino v. Waters (La. App. 1969), 220 So.2d 802; Tennessee Secondary Sch. Athletic Ass'n. v. Cox (1968), 221 Tenn. 164, 425 S.W.2d 597; State v. Judges of Court of Common Pleas (1962), 173 Ohio St. 239, 181 N.E.2d 261; Robinson v. Illinois High School Association (1963), 45 Ill. App.2d 277, 195 N.E.2d 38 (Cert. denied, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555); Sult v. Gilbert (1941), 148 Fla. 31, 3 So.2d 729.
The trial court, in its conclusions of law, found that it "should not substitute its judgment for that of the defendant association in the making and interpreting of its rules." Such finding is supported by the above authorities. On appeal, it is the duty of this court, when a proper case is brought, to review the action of the IHSAA for illegality. Absent illegality of its action, the IHSAA should be left free to exercise its sound discretion in conducting its affairs. State ex rel. I.H.S.A. Assn. v. Lawrence C.C., supra.

II.
Sturrup has raised several issues in which he alleges unconstitutionality of the action of the IHSAA. Appellees concede in their brief that the action of the member schools of the IHSAA is State action "in a constitutional sense." See: Haas v. South Bend Community School Corporation and Indiana High School Athletic Association (1972), Ind., 289 N.E.2d 495, filed November 27, 1972; Louisiana High School Ath. Assn. v. St. Augustine High Sch. (5th Cir.1968), 396 F.2d 224. Thus, we turn to the constitutional issues raised by appellant.

A.
Sturrup contends that the imposition of the one-year residency requirement upon him denies his fundamental right to education. This contention is answered by the case of State ex rel. I.H.S.A. Assn. v. Lawrence C.C., supra, at 124 of 240 Ind., at 255 of 162 N.E.2d, as follows:
"[T]he right of plaintiffs under the Indiana Constitution and statutes to go to the public schools and receive education and training cannot properly be said to include interscholastic sports and games, * * *."
The above holding was reaffirmed by Haas v. South Bend Community School Corporation and Indiana High School Athletic Association, supra.

B.
Sturrup contends that the imposition of the one-year residency requirement unconstitutionally infringes upon his fundamental right to travel. He also contends that the imposition of the one-year residency requirement is violative of his Fourteenth Amendment right to equal protection of the laws as contrasted to students in a similar situation who moved with their parents.
First. It cannot be argued but that the bylaws of the IHSAA applicable to the instant case create two classifications of students. One classification contains those students who have moved into Indiana from out-of-State and whose parents change their residence to the school district in which the student will attend school. Such students are automatically allowed to participate in athletics. The other classification contains those students who, like Sturrup, have moved into Indiana and will attend an IHSAA member school without *67 a corresponding change in the residence of their parents. Such students, assuming the hardship exception is not met, are automatically barred from participation. To determine the validity of these two classifications, they must be tested by the appropriate constitutional standards of equal protection of the law.
Second. Equal protection of the law does not prevent reasonable classification. Levy v. Louisiana (1968), 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (Rehearing denied, 393 U.S. 898, 89 S.Ct. 65, 21 L.Ed.2d 185); Morey v. Doud (1957), 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485.
In Schilb v. Kuebel (1971), 404 U.S. 357, 92 S.Ct. 479, at 484, 30 L.Ed.2d 502, at 510-511, the United States Supreme Court stated:
"The Court more than once has said that state legislative reform by way of classification is not to be invalidated merely because the legislature moves one step at a time. `The prohibition of the Equal Protection Clause goes no further than invidious discrimination.' Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). `Legislatures are presumed to have acted constitutionally ... and their statutory classifications will be set aside only if no grounds can be conceived to justify them... . With this much discretion, a legislature traditionally has been allowed to take reform "one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind."' McDonald v. Board of Election Commissioners, 394 U.S. 802, 809, 811, 89 S.Ct. 1404, 1408, 1409, 22 L.Ed.2d 739 (1969). The measure of equal protection has been described variously as whether `the distinctions drawn have some basis in practical experience,' South Carolina v. Katzenbach, 383 U.S. 301, 331, 86 S.Ct. 803, 820, 15 L.Ed.2d 769 (1966), or whether the legislature's action falls short of `the invidious discrimination,' Williamson v. Lee Optical Co., supra, 348 U.S., at 489, 75 S.Ct. at 465, or whether `any state of facts reasonably may be conceived to justify' the statutory discrimination, McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961); see United States v. Maryland Savings-Share Ins. Corp., 400 U.S. 4, 6, 91 S.Ct. 16, 17, 27 L.Ed.2d 4 (1970), or whether the classification is `on the basis of criteria wholly unrelated to the objective of [the] statute,' Reed v. Reed, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971). But the Court also has refined this traditional test and has said that a statutory classification based upon suspect criteria or affecting `fundamental rights' will encounter equal protection difficulties unless justified by a `compelling governmental interest.' Shapiro v. Thompson, 394 U.S. 618, 634, 638, 89 S.Ct. 1322, 1331, 1333, 22 L.Ed.2d 600 (1969); Oregon v. Mitchell, 400 U.S. 112, 247 n. 30, 91 S.Ct. 260, 326, 27 L.Ed.2d 272 (1970) (opinion of Justices Brennan, White, and Marshall)."
In Dunham v. Pulsifer (D.Vt. 1970), 312 F. Supp. 411, at 417, it is stated:
"The `compelling state interest' standard, or the standard of `active review' calls upon the state to show more than a link of reasonableness. The state must demonstrate the pressing importance of the classification in the context of some necessary governmental objective."
In the instant case, Sturrup was exercising a fundamental right in moving into this State. Dunn v. Blumstein (1972), 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274. By withholding from Sturrup the privilege of participation in interschool athletics the free exercise of this right was penalized. Therefore, the "compelling state interest" standard is controlling in this appeal.
Third. The record before us indicates that the one-year residency requirement of the IHSAA is intended to serve two goals. One goal is to prevent the recruiting of *68 student-athletes from one high school by other high schools. The second goal is to prevent school-jumping, that is, changing from school to school because of athletic rather than academic reasons.
Schools are for education. There is no doubt that extracurricular athletic competition may add to the educational process, but the extracurricular activities should not take precedence over the curricular activities of the school. The sideshow may not consume the circus. The prevention of recruiting and school-jumping are both fitting and proper goals by which the IHSAA maintains the amateur standing of high school athletics. This we deem to be a compelling State interest.
Fourth. Thus, the remaining question is whether the classifications established by the IHSAA are constitutionally valid.
In Dunn v. Blumstein, supra, the constitutionality of Tennessee's durational residence requirements for voting was challenged. At 1003 of 92 S.Ct., it was held:
"In sum, durational residence laws must be measured by a strict equal protection test: they are unconstitutional unless the State can demonstrate that such laws are `necessary to promote a compelling governmental interest.' Shapiro v. Thompson, supra, 394 U.S. at 634, 89 S.Ct., at 1331 (emphasis added); Kramer v. Union Free School District No. 15, supra, 395 U.S. [621], at 627, 89 S.Ct. [1886], at 1889 [, 23 L.Ed.2d 583]. Thus phrased, the constitutional question may sound like a mathematical formula. But legal `tests' do not have the precision of mathematical formulas. The key words emphasize a matter of degree: that a heavy burden of justification is on the State, and that the statute will be closely scrutinized in light of its asserted purposes.
"It is not sufficient for the State to show that durational residence requirements further a very substantial state interest. In pursuing that important interest, the State cannot choose means which unnecessarily burden or restrict constitutionally protected activity. Statutes affecting constitutional rights must be drawn with `precision,' NAACP v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963); United States v. Robel, 389 U.S. 258, 265, 88 S.Ct. 419, 424, 19 L.Ed.2d 508 (1967), and must be `tailored' to serve their legitimate objectives. Shapiro v. Thompson, supra, 394 U.S., at 631, 89 S.Ct., at 1329. And if there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity, a State may not choose the way of greater interference. If it acts at all, it must choose `less drastic means.' Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960)."
While Dunn is distinguishable from the instant case on its facts, the above-quoted guidelines are here applicable. We conclude that the classifications created in the instant case are unconstitutional.
We have hereinabove stated that each citizen, adult or minor has a fundamental right to move freely from State to State and from City to City within the State. We have also stated that the State's interest in maintaining the amateur nature of high school athletics can only be described as compelling.
The interest of the State in maintaining the amateur nature of high school athletics is very narrow  the prevention of recruiting and school-jumping. The classifications proscribed by the IHSAA are unnecessarily broad. The privilege of participation in interschool athletics is withheld for a period of one year, not only from students who have violated the State interest, but from all students[1] who do not attend high school in the district in which their parents live. It has not been shown that the determination of eligibility according *69 to whether a student attends school in his parents' home district is necessary to prevent recruiting or school-jumping. School-jumping and recruiting may take place merely by a student and his parents moving to the same school district or by a school luring both the student and his parents to another district. The only relationship between the residency requirements of the IHSAA and the evils sought to be prevented is that many students seeking to change school for athletic reasons may jump to a new school district in which his parents do not live. All students are covered by a blanket classification which has no relationship to whether a particular student's reasons for changing schools are athletic. We are constrained to hold that the one-year residency requirement of the IHSAA herein invoked against appellant-Sturrup is an unconstitutional burden on his right to travel.
This court has considered the arguments set forth by appellees and has examined the authorities they have cited. We again emphasize that maintaining the amateur status of high school athletics is a compelling State interest. The IHSAA may, and should, protect this interest by adopting reasonable standards by which eligibility of students can be determined. Such standards must be tailored to have a direct relationship to the evils of school-jumping and recruiting and, at the same time, must place the least possible burden on the exercise of rights guaranteed by the State and Federal Constitutions. Dunn v. Blumstein, supra.
In the instant case, the classifications created by the IHSAA bylaws have infringed unnecessarily upon Sturrup's right to travel.
The judgment of the trial court is reversed with instructions for further proceedings consistent with this opinion.
Judgment reversed.
STATON, J., concurs.
SHARP, J., dissents with opinion.
SHARP, Judge (dissenting).
While I agree with much of the rhetoric in the majority opinion I must respectfully dissent from its basic holding. The majority has unnecessarily applied the constitutional broad axe to the residency provision of the rules of the Indiana High School Athletic Association (IHSAA). Rule 22, Section 6 provides:
"Unavoidable Change of Residence. A student who, because of unavoidable circumstances such as the death of the parents or guardian, finds it necessary to change residence from one school district to another in order to have a home, may be declared eligible by the Board of Control, provided the principal of each member school files a statement, with supporting evidence, with the Board of Control as proof that the change was necessary and that no undue influence was attached to the case in any way. If any action of a legal agency is to be submitted as evidence of unavoidable change of residence, such action should be taken prior to the student's enrollment in the new school."
Rule 22, Section 2 provides:
"If a student transfers from one school of a City or school corporation to another of the same City or same school corporation, he shall be ineligible for participation for one calendar year unless there are definitely marked districts and his parents actually change their residence to the new school district."
Rule 12, Sections 1 and 2, provide:
"SECTION 1.
No student, who has been enrolled as a high school student in any member school, shall be permitted to participate in any inter-school contest as a member of another member school, until he has been enrolled in such school for one calendar year, unless the parents of such *70 student actually change their residence to the second school district. In the latter case, the student will be as eligible as he was in the school from which he withdrew.
SECTION 2.
A student enrolled in one high school of a city or school corporation shall not be eligible in another school of the same city or school corporation until he has been enrolled in the other school for one calendar year, unless there are definitely marked school districts and his parents actually change their residence to the new school district."
Rule 23, Sections 1 and 2, provide:
"Section 1.
The use of undue influence by any person or persons to secure or to retain a student or to secure or to retain one or both of the parents or guardians of a student as residents, may cause the student to be ineligible for high school athletics for a period subject to the determination of the Board of Control and shall jeopardize the standing of the high school in the IHSAA. By action of the Athletic Council and the Board of Control, this rule is interpreted to include any undue influence that may be exerted by anyone on a student who has not yet entered the ninth grade, to enroll in a school other than his home school or the one he ordinarily would be expected to attend or any school where he and/or his parents previously had filed a choice of subject matter card or other written evidence of preliminary enrollment or registration.
Section 2.
No member school student shall be eligible to participate in any interschool contest under the rules of the IHSAA, if it shall be shown that he or any member of his family is receiving any remuneration, either directly or indirectly, to influence him or his family to reside in a given school district in order to establish eligibility on the team of said school, and any school permitting such participation shall, upon satisfactory evidence, submitted to the Board of Control, be suspened [sic] from membership in the IHSAA for a term of not less than one year. This rule shall not interfere with the right of high school pupils to work during vacation or during out of school hours in order to earn their way through high school. It shall apply to the use of any funds created by gift, or by subscription with the intent of offering them parts of them for the free use of the player or any member of his family as an inducement to get them to change their residence to the district of the said school and to maintain residence therein."
In Mitchell v. The Louisiana High School Athletic Ass'n, 430 F.2d 1155 (5th Cir.1970), the court stated:
"28 U.S.C. Sec. 1343 grants a district court jurisdiction to redress a deprivation, under color of state law, of a right or privilege secured by the Constitution or federal law. While it is clear that LHSAA's disqualification of the students is state action for constitutional purposes, neither of appellees' allegations raises a substantial federal question.
The contention that LHSAA failed to give reasonable notice of the pertinent eligibility rules alleges a denial of due process, though both the court and the appellees denominate it an equal protection violation. For better or worse, the due process clause of the fourteenth amendment does not insulate a citizen from every injury at the hands of the state. `Only those rights, privileges and immunities that are secured by the Constitution of the United States or some Act of Congress are within the protection of the federal courts. Rights, privileges and immunities not derived from the federal Constitution or secured thereby are left exclusively to the protection *71 of the states.' The privilege of participating in interscholastic athletics must be deemed to fall in the latter category and outside the protection of due process." (Footnotes omitted)
The Fifth Circuit Court of Appeals cited as its authorities for the above statement the following cases: Louisiana High School Athletic Association v. St. Augustine High School, 396 F.2d 224 (5th Cir.1968); Oklahoma High School Athletic Ass'n v. Bray, 321 F.2d 269 (10th Cir.1963); and Johnson v. Hood, 430 F.2d 610 (5th Cir.1970).
Our own Supreme Court in State ex rel. IHSA Ass'n v. Lawrence Circuit Court, 240 Ind. 114, 124, 162 N.E.2d 250, 255 (1959) stated:
"We believe the foregoing authorities are decisive of the question before us and that the right of plaintiffs under the Indiana Constitution and statutes to go to the public school and receive education and training cannot properly be said to include interscholastic sports and games, viz.: inter-school basketball as may be engaged in between picked teams of the various public, private and parochial schools constituting the membership of relator Athletic Association.
This holding in Lawrence was recently and explicitly reaffirmed by our Supreme Court in Haas v. South Bend Community School Corporation and Indiana High School Athletic Association, Ind., 289 N.E.2d 495 (1972).
Having emphasized that participation in inter-school athletic contests is not a fundamental right, it must now be determined whether or not the Appellees have unlawfully withheld a constitutionally protected privilege of such activity from the Appellant.
It is apparent that the rationale of the majority opinion is not based on any provision of the Constitution or statutes of the State of Indiana. The result can only be justified by reference to the so-called right to travel found in the constitutional case law of the Supreme Court of the United States. I have a basic doubt as to whether the cases announcing the right to travel compels the result reached in the majority opinion. Absent such compulsion I would not judicially extend the so-called right to travel to strike down the cited IHSAA residency rules.
Without any specific reference to any specific provision in the Constitution of the United States the Supreme Court of the United States has found and held that the constitutional right to travel from one state to another exists. See United States v. Guest, 383 U.S. 745, 757, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966). The right to travel freely from state to state finds constitutional protection that is quite independent of the Fourteenth Amendment. See United States v. Guest, supra, at page 760, note 17, 86 S.Ct. 1170. This so-called constitutional right to travel has been used to strike down certain residency provisions for indigents seeking welfare payments in Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). (Warren, C.J., Black, J. and Harlan, J. dissenting). At 394 U.S. 654, 89 S.Ct. at 1342, Chief Justice Warren, in a dissenting opinion joined by Justice Black, pointed up precisely the implications of the Guest-Shapiro holdings when he said:
"The era is long past when this Court under the rubric of due process has reviewed the wisdom of a congressional decision that interstate commerce will be fostered by the enactment of certain regulations. Compare Adkins v. Children's Hospital, 261 U.S. 525, 43 S.Ct. 394, 67 L.Ed. 785 (1923), with United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941). Speaking for the Court in Helvering v. Davis, 301 U.S. 619, 644, 57 S.Ct. 904, 910, 81 L.Ed. 1307 (1937), Mr. Justice Cardozo said of another section of the Social Security Act:
`Whether wisdom or unwisdom resides in the scheme of benefits set *72 forth ... is not for us to say. The answer to such inquiries must come from Congress, not the courts. Our concern here, as often, is with power, not with wisdom.'
I am convinced that Congress does have power to enact residence requirements of reasonable duration or to authorize the States to do so and that it has exercised this power.
The Court's decision reveals only the top of the iceberg. Lurking beneath are the multitude of situations in which States have imposed residence requirements including eligibility to vote, to engage in certain professions or occupations or to attend a state-supported university. Although the Court takes pains to avoid acknowledging the ramifications of its decision, its implications cannot be ignored. I dissent."
The Warren opinion points up the need to make a careful in-depth study of the nature, dimensions and implications of the so-called constitutional right to travel and its possible application to this case.
The most recent application of the freedom to travel constitutional right was used to strike down the one year residency requirement for voting in Dunn v. Bloomstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). In footnote 13 of the Dunn case at 92 S.Ct. 1003, Mr. Justice Marshall, for the majority, states, in part:
"Nothing said today is meant to cast doubt on the validity of appropriately defined and uniformly applied bona fide residence requirements."
I believe the majority opinion here is an unnecessary application and extension of the Guest-Shapiro-Dunn holdings even under the language of the majority opinions in each of those cases.
At one point in the majority opinion here it is stated:
"We have hereinabove stated that each citizen, adult or minor has a fundamental right to move freely from State to State and from City to City within the State."
I would respectfully suggest that that sentence states the rule much too broadly even under the Guest-Shapiro-Dunn cases. I further suggest that with reference to minors there may be a variety of constitutional permissible and reasonable classifications which would restrict the absolute right of a minor to travel freely from state to state or within a state. There are a variety of constitutional permissible classifications which make valid distinctions between minors and adults. For some limited examples of distinction which limit the activities of a minor in a constitutionally permissible manner see McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); Ginsberg v. State of New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968); and Prince v. Commonwealth of Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944). It seems almost too elementary to suggest that a 12 year old child does not have an absolute right to interstate travel contrary to its parents' consent. I can't envision a contrary holding even under the most extended version of the constitutional right to travel.
I agree with the majority that the state's interest in maintaining the amateur nature of high school athletics can only be described as compelling. However, it seems to me that the premise of a compelling interest in amateur high school athletics would lead logically under Guest-Shapiro-Dunn to an affirmation of the validity of the residency requirements in the IHSAA rules here in question and not to their destruction. The so-called compelling interest doctrine constitutes a significant exception to the long established rule that a statute does not deny equal protection if it is rationally related to a legitimate governmental objective. See New York Rapid Transit Corp. v. City of New York, 303 U.S. 573, 58 S.Ct. 721, 82 L.Ed. 1024 (1938). The compelling interest doctrine *73 has two branches. One branch requires that classifications based upon "suspect" criteria be supported by a compelling interest. This branch apparently had its genesis in cases beginning with Korematsu v. United States, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944), involving racial classifications which have henceforth been regarded as inherently suspect. See also Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). The criterion of "wealth" was apparently added to the list of suspects as an alternative justification in Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). The criterion of political allegiance may have been added in Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). Apparently the list of suspects has been further enlarged to include classifications based upon recent interstate movement and perhaps those based on the exercise of any constitutional right. Shapiro v. Thompson, supra.
This writer strongly agrees that this branch of the "compelling interest" doctrine is unquestionably sound when applied to racial classifications, because historically the equal protection clause was largely the product of the desire to irradicate legal distinctions found upon race. This is certainly not that kind of case.
Since the right to travel in the Guest-Shapiro-Dunn cases is not based upon the equal protection clause of the Fourteenth Amendment the courts of this nation may strike down state residency requirements without reference to the equal protection clause. The basic question remains whether we are compelled to do so in this case.
There is a second branch of the "compelling interest" principle which is more difficult. It has been held that a statutory classification is subject to the "compelling interest" test if the result of the classification may be to effect a "fundamental right" regardless of the basis of the classification. In Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), an Oklahoma statute providing for compulsory sterilization of habitual criminals was held subject to strict scrutiny because it affected one of the basic civil rights. In Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), state apportionment statutes were subjected to an unusually stringent test because any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized. In Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965), a Texas statute denying certain servicemen the right to vote without indicating the statutory distinction between servicemen and civilians was held to be "suspect". I find this branch of the "compelling interest" doctrine particularly troublesome. One of its troubles is that it creates an exception which threatens to swallow up the standard equal protection rule. Virtually every enactment by a state legislature affects important rights. The traditional equal protection standard is applicable to statutory classifications affecting such fundamental matters as the right to pursue an occupation, the right to receive greater or smaller wages, the right to work more or less hours, and the right to inherit property. See Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); Bunting v. Oregon, 243 U.S. 426, 37 S.Ct. 435, 61 L.Ed. 830 (1917); Miller v. Wilson, 236 U.S. 373, 35 S.Ct. 342, 59 L.Ed. 628 (1915); and Ferry v. Spokane, P. & S.R. Co., 258 U.S. 314, 42 S.Ct. 358, 66 L.Ed. 635 (1922). It would seem to this writer that the rights referred to in the cases cited immediately preceding are now subject to the "compelling interest" rule. If this premise is correct it is possible for the state and federal judiciary under the so-called "compelling interest" rule to aggressively engage in widespread legislative activity which is beyond the proper scope of the judicial function. It is this writer's opinion that this second branch of the compelling interest principle to strike down any classification which affects a "fundamental right" is unnecessary. When the so-called fundamental right affected *74 is one assured by the federal Constitution any infringement of it can be dealt with in the traditional manner under the due process clause. But when a statute or regulation affects only matters not mentioned in the federal Constitution it is not arbitrary or irrational. Under this rule the judiciary may pick out a wide variety of human activities, characterize them as "fundamental" and give them added protection well beyond the traditional concept of reasonable classification under the equal protection clause.
Framed in constitutional terms the key question here is whether the governmental interest served by the residency requirements in question outweigh any supposed burden upon the right to travel. In this case it seems to me that any impact of the residency requirement of the above quoted rules upon the freedom of individuals to travel interstate is indirect, remote and insubstantial. Taking all of these factors into consideration I believe that the balance distinctly favors the constitutionality of the residency requirements in these rules. In reaching this conclusion I do not underestimate the importance of the right to travel interstate. The impact of the residency conditions upon this right, however, is indirect, and apparently quite insubstantial. On the other hand, the governmental purposes served by the requirements of maintaining high school athletics on an amateur basis with high standards are legitimate and real and the residency requirements in these rules, on their face, are reasonably suited for that accomplishment.
I, for one, do not believe that this court or any court possesses peculiar wisdom all of its own and can implement that wisdom by contriving and extending new constitutional principles and theories to impose that wisdom on the body politic. As one who believes deeply that it is the proper function of the judiciary to maintain the proper divisions of authority among the three branches of the government I can see nothing but trouble for a judiciary which aggressively and without self-restraint pushes the concepts of Guest-Shapiro-Dunn to their outer limits. I suggest that this case is beyond those proper outer limits. This extension of an already expanded view of equal protection carries with it the seeds of more and too much judicial interference with the legislative and administrative processes. The facts in this case are simple and of little import, except of course, to this young man. However, the broad rationale of the majority opinion is very important. It represents an open invitation to use the so-called right to travel to attack a wide variety of state legislative enactments and regulations. It is an invitation which I would not issue. It is an invitation in which I cannot join.
NOTES
[1] Notwithstanding the unusual hardship exception of Rule 22, § 6, of the bylaws of IHSAA.