Argued and submitted January 13, affirmed May 26,
reconsideration denied July 16,
petition for review denied August 25, 1981 (291 Or 504)

COOPER,
*Appellant,*

*v.*

OREGON SCHOOL ACTIVITIES
ASSOCIATION et al,
*Respondents.*

(No. A7911-05444-E, CA 16349)

FAHERTY,
*Appellant,*

*v.*

OREGON SCHOOL ACTIVITIES
ASSOCIATION et al,
*Respondents.*

(No. A7911-05445)

629 P2d 386

Rex E. H. Armstrong, Portland, argued the cause for appellants. With him on the briefs were Daniel H. Skerritt and Lindsay, Hart, Neil & Weigler, Portland.

John P. Conley, Portland, argued the cause for respondents. With him on the brief was Hardy, McEwen, Newman & Hanna, Portland.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

Roberts, J., dissenting.

## GILLETTE, P. J.

These are consolidated suits for declaratory and injunctive relief in which plaintiffs seek declarations that they are eligible to participate in interscholastic sports competition in their respective high schools and injunctions against enforcement of an Oregon School Activities Association (OSAA) rule that bars them from participating in such competition for one year following their transfer from parochial to public high schools. Plaintiffs appeal from a trial court order dismissing their complaints and awarding judgment to defendants. We affirm.

We take the facts from plaintiffs' complaints. Plaintiffs are high school students attending public schools in Portland. Plaintiff Theresa Cooper is a sophomore at Madison High School; plaintiff Brian Faherty is a sophomore at Grant High School. Defendant OSAA is a voluntary association of public and private schools in Oregon that was established primarily to regulate interscholastic athletic competition. Grant and Madison High Schools are members of OSAA, as are virtually all other public and private high schools in the state. Defendant Ryan is the executive director of OSAA.

Both plaintiffs spent their freshman year at parochial high schools. They would have preferred to attend public rather than parochial schools during their freshman year, but their parents chose to send them to parochial high schools in order for them to continue their religious education. Both plaintiffs participated in athletics during their freshman year at these high schools. At the end of their freshman year, however, they prevailed upon their parents to permit them to transfer to public high schools. Athletic considerations played no part in their transfer decisions, and neither student was encouraged to transfer or recruited for athletics by personnel at the public high schools to which they were transferring.

The OSAA rule in question provides, in pertinent part:

"Article 20, *Eligibility Rules* * * *

"20-6 TRANSFER

"* * * * *

"20-6-2 A student who transfers from any high school to any member high school becomes ineligible until one calendar year after the student first attends the new school. For purposes of this rule, a student is deemed to have transferred from another high school if at any previous time the student registered and attended classes at, or participated in any way in athletics at, another high school."

The rule was adopted to preserve harmony among member schools by preventing both actual recruitment of high school athletes and the appearance of recruitment. There are a number of exceptions to it,[1] but none applies to plaintiffs.

Grant High School, on Brian Faherty's behalf, filed a "hardship" request with OSAA seeking a waiver of the OSAA transfer ineligibility rule. The parochial school from which Faherty transferred had no objection to the request and later joined with Grant High School in making it. Defendant Ryan denied the requested waiver. An appeal filed with OSAA's Board of Control was also denied. Theresa Cooper's father met with Ryan concerning a similar request to waive the transfer ineligibility rule; Ryan advised him that a waiver request would be futile. As a consequence, plaintiffs filed the present actions.

Plaintiffs challenge Rule 20-6-2 on both statutory and constitutional grounds. They contend that the school districts, acting through OSAA, did not have the authority to adopt or enforce the transfer rule, because the rule improperly penalizes plaintiffs for exercising their statutory right to attend parochial instead of public schools and because the rule violates ORS 339.115, which requires school district boards to

"* * * admit free of charge to the schools of [their] district all persons between the ages of 6 and 21 residing therein."

In addition, plaintiffs argue that the rule violates the Privileges and Immunities Clause of the Oregon Constitution and deprives them of their rights to religious freedom, free association and equal protection guaranteed by the First and Fourteenth Amendments to the United States Constitution.

---

[1] *See* n 8, *post.*

## I. Statutory considerations

■　We first consider plaintiffs' statutory arguments.[2] We note at the outset that the contractual agreement between the school districts and OSAA confers authority on OSAA to operate as an agent for the member schools. Therefore, OSAA may enforce the rules which the member schools, acting through OSAA, adopt. By the same token, OSAA is subject to statutory and administrative rules which regulate school districts.

■　Plaintiffs' right under ORS 339.030(2)[3] to attend parochial instead of public schools is obviously not impinged upon by the transfer rule. Neither child is in any way being prohibited from attending such schools. Neither do we think the rule in question violates ORS 339.115,[4] which simply requires schools to admit pupils free of charge. Plaintiffs rely on *Neuhaus v. Federico,* 12 Or App 314, 505 P2d 939, *rev den* (1973), for the proposition that, in the absence of specific statutory authority given to a board to restrict student participation, a student admitted under ORS 339.115, *supra,* is entitled to participate in activities at the school. We agree with plaintiffs that the school district's authority is limited to "enacting rules [which have] a reasonable relation with the proper operation of the

---

[2] Defendants contend that plaintiffs' statutory argument against the transfer rule should not be considered on appeal because it is not raised in their pleadings. However, plaintiffs raised this argument in their trial brief in support of their preliminary injunction motions. Moreover, this court has discretion to consider statutory arguments although the parties have only raised constitutional ones. *State v. Spada,* 286 Or 305, 594 P2d 815 (1979).

[3] ORS 339.030 provides, in relevant part:

"Exceptions from compulsory school attendance. In the following cases, children shall not be required to attend public full-time schools:

"* * * * *

"(2) Children being taught in a private or parochial school. * * *"

[4] ORS 339.115 provides, in pertinent part:

"(1) Except as provided in ORS 336.165 authorizing tuition for courses not part of the regular school program, the district school board shall admit free of charge to the schools of the district all persons between the ages of 6 and 21 residing therein. However, a district school board may admit other nonresident persons, determine who is not a resident of the district and may fix rates of tuition for nonresidents.

"* * * * *"

schools." *Neuhaus v. Federico, supra,* 12 Or App at 322. However, *Neuhaus* does not stand for the proposition that students are entitled to participate in *all* activities at the school.[5] In fact, plaintiffs conceded on oral argument that a school can internally restrict the number of extracurricular activities in which a student may take part if the school can connect such action with promotion of educational goals. If a single school can do that, we fail to perceive why it cannot do so in conjunction with other schools, so long as the resulting rule bears a reasonable relationship to the goal of fostering interscholastic athletic competition. We conclude that Rule 20-6-2, by preventing recruitment of athletes between high schools, serves such a purpose.

*II.  Right to free exercise of religion*

■        The right to free exercise of religion is guaranteed by Art I, §§ 2 and 3 of the Oregon Constitution and by the First Amendment to the United States Constitution.[6] These provisions protect a parent's right to send his or her child to parochial instead of public schools, ORS 339.030(2), *Pierce v. Society of Sisters,* 268 US 510, 45 S Ct 571, 69 L Ed 1070 (1925), as well as the child's right to free exercise of religion. *Wisconsin v. Yoder,* 406 US 205, 92 S Ct 1526, 32 L Ed 2d 15 (1972).

■ ■        From the case law, it is clear that the Free Exercise Clause of the First Amendment could work to condemn laws such as the transfer rule at issue here, at least where application of such laws clashes "with imperatives of religion and conscience when the burden on First Amendment

---

[5] The only specific limitation placed on the school district's authority to regulate interscholastic athletics is provided by OAR 581-21-046(4):

> "Athletics. A district which operates or sponsors interscholastic club or intramural athletics shall provide equal athletic opportunity of members of both sexes, of all ages and ethnic groups, and persons with handicaps. In determining whether equal opportunities are available, the Superintendent of Public Instruction shall consider, among other factors, whether the selection of sports and levels of competition effectively accommodate the interests and abilities of all students."

It is clear that no violation of this rule existed here.

[6] Administration of high school athletics by OSAA has been held to constitute "state action" within the meaning of the Fourteenth Amendment. *Josephine Co. School District v. OSAA,* 15 Or App 185, 195, 515 P2d 431 (1973). Therefore, this court may properly consider whether the application of the transfer rule in this case violates any rights secured by the state or federal Constitutions.

values is not justifiable in terms of the government's valid aims." *Gillette v. United States,* 401 US 437, 462, 91 S Ct 828, 28 L Ed 2d 168 (1971). In assessing the permissibility of any rule which creates a burden on such values, the importance of the state's interest, the degree of encroachment on the individual's freedom and the availability of less intrusive means are the principal factors to be considered. *See Sherbert v. Verner,* 374 US 398, 83 S Ct 1790, 10 L Ed 2d 965 (1963).

■     We first consider the burden. In this case, the transfer rule's impact on plaintiffs' religious freedom is minimal. The rule does not single out parochial schools for different treatment, nor does it prevent parents from sending their children to such schools.

As to the factor of the government's interest, regulation of recruiting is a necessary component of interscholastic athletics. Such regulation has even been deemed a "compelling state interest." *Josephine Co. School District v. OSAA,* 15 Or App 185, 201, 515 P2d 431 (1973). As defendants point out, if students could choose to go from one high school to another in order to be on a better team, particular schools might almost always have the best teams in certain sports and competition would become meaningless.

Plaintiffs argue that the burden imposed by the rule is impermissible because, they say, there are options available to OSAA which would allow the state to accomplish its goal without interfering with individual religious beliefs. However, we think that, since the encroachment of the transfer rule on the free exercise of religion is both "limited in scope and insignificant in magnitude," the incidental burden imposed on parents and children is constitutionally permissible. *See Walsh v. Louisiana High Sch. Athletic Ass'n.,* 616 F2d 152, 158 (5th Cir 1980). Further, any exception promulgated to apply specifically to parochial schools would raise problems under the Establishment Clause—another equally important part of the First Amendment. While we agree that the transfer rule penalizes these plaintiffs, it does so neither because it is specifically aimed at parochial schools nor because its impact falls only or especially upon students transferring to or from such schools. We do not think that the rule's impact

on religion is sufficient to invalidate it on religious freedom grounds.

### III. Equal Protection

A more substantial question presented to us is whether the challenged rule violates the Privileges and Immunities Clause, Art I, § 20 of the Oregon Constitution, or the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.[7]

We begin our analysis with the plaintiffs' claim under the Oregon Constitution. *See State v. Spada,* 286 Or 305, 594 P2d 815 (1979); and *see generally* Linde, "First Things First, Rediscovering the State's Bill of Rights," 9 Balt L Rev 379 (1980).

The Oregon Supreme Court has recognized that the scope of Art I, § 20 and that of the federal Equal Protection Clause are generally the same. *See, e.g., City of Klamath Falls v. Winters,* 289 Or 757, 769 n 10, 619 P2d 217 (1980). However, Oregon courts are free to interpret Art I, § 20 as affording plaintiffs greater protection than the Federal Constitution, if there is any legal basis for such a construction. *Olsen v. State ex rel Johnson,* 276 Or 9, 554 P2d 139 (1976). Any difference in treatment under the two provisions derives from the fact that

> "[t]he provisions of the state constitution are the antithesis of the Fourteenth Amendment in that they prevent the enlargement of the rights of some in discrimination against the rights of others, while the Fourteenth Amendment prevents the curtailment of rights * * *." *State ex rel Reed v. Schwab,* 287 Or 411, 417, 600 P2d 387 (1979), *cert den* 444 US 1088, *rev den* 445 US 955 (1980).

Thus, in some cases, the applicability of the two clauses might not be identical. *See* Linde, Without Due Process, 49 Or L Rev 125, 142-143 (1970).

---

[7] Or Const, Art 1, § 20 provides:

"No laws shall be passed granting to any citizen or class of citizens privileges, or immunities, which upon the same terms, shall not equally belong to all citizens."

The Fourteenth Amendment of the United States Constitution provides, in part:

"* * * no state shall * * * deny to any person within its jurisdiction equal protection of the laws."

Under the circumstances present in this case, we find no distinction between the Oregon and federal constitutional claims. The question under Art I, § 20 is whether the privilege of transferring without penalty is extended to some who transfer for non-athletic reasons, while it is denied to others who are not in a sufficiently dissimilar situation in terms of the purpose of the rule to justify the difference in treatment. The questions presented under the Equal Protection Clause of the Fourteenth Amendment are (1) whether the transfer rule is unequal in application to all transferring students in a way which bears no rational basis in terms of the purpose of the rule, or (2) whether the rule discriminates without any rational basis between those to whom it applies and others similarly situated whom it excludes. *See Bock v. Bend School District No. 1,* 252 Or 53, 55, 448 P2d 521 (1968). These two lines of analysis mirror each other. We conclude that the controlling principles which guide us in determining this question are the same under both the Equal Protection Clause of the Fourteenth Amendment and under the Privileges and Immunities Clause of the Oregon Constitution. *See Olsen v. State ex rel Johnson, supra,* 276 Or at 16.

Notwithstanding the fact that we have concluded that the impact of the two provisions is the same in this instance, the Oregon Supreme Court, in analyzing Article I, § 20 claims, has eschewed the federal approach of categorizing an interest as "fundamental" or "nonfundamental" and has instead employed a "balancing test" wherein the court weighs the detriment caused to plaintiff by a particular classification against the state's ostensible justification for the classification. *Olsen v. State ex rel Johnson, supra.* Therefore, although the protection afforded plaintiffs is said to be the same under the Oregon and Federal constitutions, the analytical approach is somewhat different.

We now turn to the specific facts of this case. The stated purpose of the transfer rule is to:

"* * * preserve harmony among member schools and districts by preventing not only actual proselytizing, professionalism and participation by other than regular students in good standing, but conduct or circumstances which may give rise to the appearance thereof." Article 20, Eligibility Rules, OSAA.

The rule also prevents "school jumping" by a student athlete who is choosing a school for its athletic potential. *Josephine Co. School District v. OSAA, supra.*

The rule provides for a number of exceptions which are to be "narrowly construed to preserve the purpose of the rule."[8] Plaintiffs point specifically to three exceptions which, they contend, violate their constitutional rights by allowing some students who transfer for non-athletic reasons to participate in interscholastic sports without penalty while denying that privilege to plaintiffs.

---

[8] The Oregon School Activities Association Eligibility Rules, Article 20, provides, in pertinent part:

"20-6-1 TRANSFER

"Before a student can participate in athletics after having transferred from one high school to another high school, a transfer certificate in form prescribed by the Association, properly signed by the superintendent or principal of the high school he enters, must be filed with the Association office. (Transfer Certificate)

"20-6-2 A student who transfers from any high school to any member high school becomes ineligible until one calendar year after he first attends the new school. For purposes of this rule, a student is deemed to have transferred from another high school if at any previous time he registered and attended classes at, or participated in any way in athletics at, another high school.

"(a) A student does not lose eligibility where he registered or attended the previous high school under a bona fide error as to the boundary of its district, provided that he has not participated in any way in athletics at the previous high school.

"(b) A student does not lose eligibility where he moves with his parents, or with a person who prior to their move was his legal guardian and lived with him, either from outside or within this state, or from within to outside the district (as established by the district school board) of his previous school, or from outside or within the district of his new school. For purposes of this Article, a 'district' is any public high school district (including unified or similar districts) established under Oregon law, and the 'district' of a private school is the district in which it is located, or if it is not located in a district as defined herein, any Oregon public school district (including non-high school districts) in which it is located. For purposes of this Section, the student and his parents or guardian 'move' when they establish a joint residence for all purposes, with the intent to reside there indefinitely and terminate all occupancy of their previous residence.

"20-6-3 A student does not lose eligibility where he transfers between school years from a school outside his home district to a school within his home district. His home district is the district in which he and a parent or guardian resided both at the time of the transfer and at the time of first enrollment in the previous school.

1. The first such exception allows students who transfer back to their home district to do so without losing eligibility. Rule 20-6-3. The reason for the exception is to encourage students to return to their home districts. OSAA presumes that those who do so move for *bona fide* reasons because of the proximity of the high school in the home district to the student's residence. In application, this exception allows a student who resides in the Grant High School attendance area to attend Jesuit High School, a parochial school, and transfer back to Grant without losing eligibility because Jesuit is geographically located within the boundaries of the Beaverton public school district and Grant is in the Portland public school district. On the other hand, a student who transfers from Central Catholic High School, the parochial high school which plaintiff Brian Faherty attended, to Grant High School loses his elibility because both Central Catholic and Grant are located geographically within the Portland school district. Plaintiffs point out that, under this exception, a student who lives

"20-6-4 A student does not lose eligibility where he transfers to or from a boarding school, if in the school year in which he transfers he did not participate on any high school team with an interscholastic competitive schedule or if the principal of the previous school signs and files with the Executive Secretary of the Association a paper releasing the student for athletic activity at the new high school.

"20-6-5 A student does not lose eligibility where he enters the beginning year of a four-year (9-12) or senior (10-12) high school for the first time.

"20-7 Despite compliance with any other rules herein, a student is thereafter ineligible and the high school to which he transfers, if involved as hereinafter, is subject to a fine and/or suspension if the student transfers from any high school to a member school because of the request or suggestion of any coach or other member of the athletic staff of the new high school, or if he so transfers for athletic purposes upon the request or suggestion of any employee of the new school or its district, or if he so transfers for athletic purposes because of a promise by any person of pecuniary benefit to the student or to any member of his family.

"20-8 HARDSHIP

"20-8-1 Except for the eligibility rule regarding age, the Board of Control (or as it may provide, the Executive Secretary) in individual cases may, at its discretion and upon such terms and conditions as it may impose, waive or modify any eligibility rule when in its opinion there are circumstances beyond the control of the student whereby enforcement of the rule would work an undue hardship upon the student.

"20-8-2 Hardship requests are to be submitted and decided in accordance with rules and guidelines established from time to time by the Board of Control."

near but inside the western boundary of the Portland school district could attend Jesuit High School his first year and transfer to Central Catholic in East Portland without losing elibility although he would travel much farther to attend school after the transfer. In contrast, a student such as Brian Faherty who attends the parochial school closest to his home and then transfers back to the public high school closest to his home would not preserve his eligibility under the transfer rule. Plaintiffs suggest that an exception which more closely focuses on geographic proximity might avoid the constitutional problems they raise.

2. Plaintiffs also call our attention to the exception made for students who attend boarding schools. Rule 20-6-4. This exception provides that a student who transfers from a boarding school may participate in interscholastic sports after the transfer if the student did not participate in sports in the year of the transfer or if the principal of the boarding school signs a certificate releasing the student for athletic activities at the new high school. The rationale behind the exception is that a boarding school is, for many purposes, the residence of the student and OSAA generally presumes that transfers made due to changes in residence are 'bona fide.'[9]

3. Finally, plaintiffs point out that, as presently interpreted, the OSAA rule allows a public school district to permit "administrative transfers" between public schools within that district to be made without penalty, provided the transfers are for other than athletic purposes. The Portland school district has such a rule. Thus, a student who lives in a large public multi-school district such as Portland may transfer from any public school to any other public school within the district without penalty as long as the transfer is for any non-athletic reason recognized by local school board officials. Plaintiffs argue that this defer-ence to the judgment of local officials for intradistrict transfers and not for interdistrict transfers is unconstitutional.

---

[9] *See* paragraph (b), OSAA Transfer Rule 20-6-2, n 8, *supra.*

■ The only difficult application of the equal protection analysis is that which we apply in connection with the "administrative transfer" exception. The result of this rule in application is that a student may be administratively transferred within, for example, the Portland public school district without loss of eligibility but will lose a year's eligibility for transferring either to or from a private or parochial school which is within the same *geographic* area. Thus, students who are similarly situated—at least geographically—are treated differently.

We think, however, that similarity of geography is an illusory criterion in cases such as this, because the pertinent consideration is that of administrative control. In any multi-school public school district, student transfers may occur for a variety of reasons which the individual district finds either appropriate or permissible — *e.g.,* transfers to equalize class size, to achieve racial balance, or even to permit students to transfer to certain schools to gain the benefit of particular programs. A student in such a district may be *required* by the district to transfer or may do so for his or her own reasons. Indeed, the blend of volitional and nonvolitional elements in a particular case will vary almost infinitely, a fact which directly reflects the impact of administrative considerations on each transfer. In light of the varied administrative concerns which may be involved, OSAA does not interject itself into the day-to-day operation of school districts. Rather, it leaves it to the district to identify transfers for such non-athletic purpose.

In contrast, the Portland public school district cannot either force or forbid a student to transfer to or from a private or parochial school, wherever such school may be located. There is nothing "administrative" about such transfers, and OSAA may reasonably treat them differently than it treats intradistrict administrative transfers.

We agree with plaintiffs that the transfer rule and its exceptions sweep very broadly. It is unfortunate that OSAA does not have a rule which, by more careful tailoring, might avoid the situation produced by its application here. For example, OSAA might enact an additional

exception which recognizes that students who attend parochial and private schools often do so because of a parental desire that the student have an education of a particular quality, and provides that transfers to or from these schools should be rebuttably presumed to be for non-athletic reasons. This exception could be fashioned after the boarding school exception and allow transfer without penalty to students from parochial or private schools if they obtain a signed waiver from the principal of their prior school.

However, the mere fact that we believe we can identify a more fair and equitable approach to the transfer problem does not give us the right to declare the present transfer rule unconstitutional. Applying the Oregon constitutional test first, we recognize that participation in interscholastic sports is important to all students who, like plaintiffs here, undoubtedly derive uncalculated benefits from such competition. On balance, however, we hold that the "compelling interest" of OSAA and high schools generally, *see Josephine Co. School District v. OSAA, supra,* 15 Or App at 201, in rules which will discourage proselytizing the appearance of proselytizing and school jumping, and which are easy to apply, outweighs the detriment caused to these plaintiffs. Although the transfer rule is broad in sweep, such lack of precision will not, under Oregon law, make it constitutionally impermissible. *Olsen v. State ex rel Johnson, supra,* 276 Or at 26. We conclude that the transfer rule does not violate Art I, § 20 of the Oregon constitution.

Turning to the federal constitution, we must first examine the nature of plaintiffs' interest in order to determine the appropriate standard of review. *Dunn v. Blumstein,* 405 US 330, 335, 92 S Ct 995, 31 L Ed 2d 274 (1972). Although interscholastic sports is an important and integral part of a student's total educational experience, we cannot classify plaintiffs' interest as fundamental in view of the fact that the U. S. Supreme Court has held that the right to education itself is not "fundamental."[10] *See San*

---

[10] Plaintiffs attempt to classify their right to transfer without penalty as "fundamental" by arguing that the transfer rule impinges upon their right to travel. *See Josephine Co. School District v. OSAA, supra.* However, assuming without deciding that *Josephine* was correctly decided, such argument is not

*Antonio Independent School Dist. v. Rodriguez,* 411 US 1, 93 S Ct 1278, 36 L Ed 2d 16 (1973). A number of federal district courts which have considered this question with respect to athletics have come to the same conclusion. *See, e.g., Walsh v. Louisiana High Sch. Athletic Ass'n., supra; Mitchell v. Louisiana High Sch. Athletic Ass'n.,* 430 F2d 1155 (5th Cir 1970); *Gilpin v. Kansas State High Sch. Activities Assn., Inc.,* 377 F Supp 1233, 1240 (CD Kansas 1974); and *see* "Review of Judicial Disputes Between Athletes and the National Collegiate Athletic Association," 24 Stan L Rev 903 (1972). Therefore, we hold the "rational basis" rule is applicable here.

■ As already demonstrated by our discussion under the Oregon Constitution, we find that a rational relationship exists between the classifications made by the transfer rule and the legitimate purpose of the rule. Both the "returning home" and the boarding school exceptions generally emphasize proximity to the child's actual place of residence and are therefore not capricious or arbitrary. The administrative transfer exception applies equally to all districts and serves the rule's stated purpose of preserving harmony between *districts* by allowing each district to scrutinize the validity of transfers within its own boundaries. Although the OSAA's transfer rule has produced unfortunate results in this case, the use of generalized rules frequently produces difficult results in some circumstances. Under traditional equal protection scrutiny, however, a statute or rule may not be condemned simply on the ground that it is "overbroad." *See, e.g., Hughes v. Alexandria Scrap Corp.,* 426 US 794, 813, 96 S Ct 2488, 49 L Ed 2d 220 (1976); *Williamson v. Lee Optical,* 348 US 483, 489, 75 S Ct 461, 99 L Ed 563 (1955). As the Oregon Supreme Court stated in *School District No. 12 v. Wasco County,* 270 Or 622, 529 P2d 386 (1974):

"* * * a classification having some reasonable basis does not offend against the Federal Constitution or the Constitution of this state merely because it is not made with

appropriate here as plaintiffs have literally not traveled anywhere, but have merely transferred between schools while maintaining the same residence. We similarly find plaintiffs' argument that the rule impinges upon their fundamental right to freedom of association inapposite since the rule does not deny the right to go to a high school of their choosing nor does it prohibit them from engaging in sports, but merely prevents them from engaging in certain forms of competition.

mathematical nicety or because in practice it results in some inequality. * * *" 270 Or at 629. (quoting *Mallatt v. Luihn et al,* 206 Or 678, 702, 294 P2d 871 (1956)).

We are aware that one state court has used overbreadth as a basis for declaring a similar transfer rule to be in violation of the federal Equal Protection Clause. *See Sturrup v. Mahan,* 290 NE2d 64 (Ind App 1972), *modified* 261 Ind 463, 305 NE2d 877 (1974). With respect, we do not think that the Indiana court correctly applied federal law. *See Walsh v. Louisiana High Sch. Athletic Assn., supra,* 616 F2d at 160 (1980).

■ We conclude that, inasmuch as the right to participate in interscholastic sports is not by itself a "fundamental" interest, and inasmuch as the application of OSAA's rules in this case has not impinged upon a recognized fundamental right or upon a suspect class and, further, because the distinctions made by OSAA's rules exceptions appear to be based upon considerations which bear a logical relationship to preventing athletic recruiting and the appearance thereof, the transfer rule is constitutionally valid under the federal Constitution. Under similar circumstances, the Fifth Circuit Court of Appeals reached the same conclusion in *Walsh, supra:*

> "The rule seeks to deter or eliminate such recruitment. Accordingly, it imposes a direct cost on an identifiable overt act that must necessarily accompany that conduct. Moreover, by exacting its price in terms of a period of interscholastic athletic ineligibility, the transfer rule focuses its effect on athletic recruiting. The rule adopted by LHSAA, together with the classification that results, is rationally and logically related to the association's valid and legitimate interest." 616 F2d at 160.

*See also, Mitchell v. Louisiana High School Athletic Assn., supra; Gilpin v. Kansas State High School Activities Assn., supra; Chabert v. Louisiana High School Athletic Assn.,* 323 So 2d 774 (La 1975); *cf. Louisiana High School Athletic Assn. v. St. Augustine High School,* 396 F2d 224 (5th Cir 1968) (unconstitutional because classification based on race); *Brenden v. Independent School District 742,* 342 F Supp 1224 (D. Minn 1972) (denial of equal protection because the rule denied athletic participation on the basis of sex alone); *Josephine Co. School District v. OSAA, supra*

(denial of equal protection because the rule impinges upon the fundamental interest of the student's right to intrastate movement).

Affirmed.

**ROBERTS, J.,** dissenting.

I dissent from the majority opinion, because in my view the OSAA rule which penalizes a student's intradistrict transfer from a private school to a public school by barring the student from competitive athletics for a year produces considerably more than what the majority terms "unfortunate results." I believe it violates Art I, § 20 of the Oregon Constitution.

The majority opinion fails to deal adequately with the fact that within the rule's "administrative transfer" exception, which mandates OSAA deferral to the transfer of students within a multi-school district by the school administration without loss of athletic eligibility, there are two significantly different types of transfers. The first is the kind of nonvoluntary transfer of numbers of students to achieve racial balance or other district-wide goals. The record indicates, however, that there is a second type of administrative transfer, which is *student*-initiated, and in which the district, not OSAA, has the authority to decide whether the move is for "athletic purposes" and whether the student transferring should forfeit athletic eligibility. Thus, students moving for non-athletic purposes from one public school to another within the same geographic district have an administrative level at the school itself in which to plead their case regarding an intradistrict transfer, but this opportunity is not available to students transferring to or from a private school within that district. Thus the rule, it seems to me, grants to public school students within larger districts a privilege which is denied students at private schools. The "boarding school exception," which allows a similar administrative waiver for students transferring to or from boarding schools, applies to only a limited number of private schools. OSAA rules do provide for a "hardship exception;" however, that rule was of no help to these students.

Further, I do not agree that the infringement on plaintiffs' rights is "minimal." For a high school athlete, the loss of a year of local and regional competition and coaching instruction may mean the difference between playing on a varsity team and sitting on the sidelines. This, in turn, may make the difference in attracting the eye, and offer, of a college recruiter. For some, an athletic scholarship may make the difference between going to college or not. With the rising cost of a college education, loss of the opportunity to compete for athletic scholarships is not a minimal loss, even were I to accept the majority's view that the loss of the ability to optimize one's talents is not in itself a significant deprivation of plaintiffs' rights. *See Kite v. Marshall,* 454 F Supp 1347, 1399 (SD Tex 1978), 494 F Supp 227, 232-33 (SD Tex 1980) 454 F Supp *supra,* 1347, 1349; *Reed v. Nebraska School Activities Association,* 341 F Supp 258, 262 (DC Neb 1972).

Because I do not find the intrusion to be minimal, I would demand something more than a "logical relationship" between the OSAA rule challenged and the goal it purports to achieve (preventing proselytizing and professionalism in high school athletics). I would require any such rule to be drafted more narrowly to protect, without penalty, Oregon students' statutory and constitutional rights to attend a private school.[1]

---

[1] I concur in *Whipple v. OSAA,* 52 Or App 419, 629 P2d 384 (1981), because it does not raise the intradistrict question.