In the Matter of the Appeal of
Bradley Stout Contesting a Determination
of Ineligibility to Participate in
Athletics at the Rogue River High School.

OREGON SCHOOL ACTIVITIES ASSOCIATION,
*Petitioner,*

*v.*

STOUT et al,
*Respondents.*

(CA A30198)

692 P2d 633

Don G. Carter, Portland, argued the cause for petitioner. With him on the brief was McEwen, Hanna, Gisvold & Rankin, Portland.

William A. Mansfield, Medford, argued the cause and filed the brief for respondent Bradley Stout.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent Verne A. Duncan. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warren and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioner, Oregon School Activities Association (OSAA), seeks judicial review of an order of the State Superintendent of Public Instruction, Duncan (Superintendent), which declared Stout eligible to participate in interscholastic athletics at Rogue River High School. It asserts, first, that the Superintendent should have dismissed the matter on the ground that Stout had not appealed OSAA's initial decision that he was ineligible to the OSAA Executive Board and there had, therefore, been no "final determination," as required by administrative rule, before the Superintendent could consider the matter. In the alternative, it argues that the Superintendent erred in ruling that OSAA's determination that Stout was ineligible for interscholastic athletics violates Or Laws 1983, ch 823, § 2 (*codified as* ORS 339.450). We reverse.

■ Stout, who had resided in Gold Hill much of his life, lived with his mother in Salem during part of his junior year in high school. He moved back to Gold Hill to live with friends of his family for his senior year. No one argues that the move back to Gold Hill was athletically motivated. Stout sought a waiver of the rules of OSAA that require, with exceptions not relevant here, that a student attend school in the district in which his parents reside. Petitioner's Executive Director, Ryan, denied the waiver request in a letter dated September 13, 1983. Stout then sought review of OSAA's decision before the Superintendent. From the Superintendent's ruling in favor of his eligibility, this appeal followed.[1]

■ OSAA's first argument—failure to exhaust administrative remedies—may be dealt with summarily. The temporary rule under which the Superintendent was proceeding required a "conclusive ineligibility ruling" as a predicate to his authority to act. OAR 581-21-035(1)(a). OSAA does not, in its brief, point to any place in the record which shows that the alleged path of internal "appeal" from Ryan to the OSAA

---

[1] The passage of time has rendered this case moot as to Stout, who has now graduated. We nonetheless retain jurisdiction because the problem is one "capable of repetition, yet evading review," *Roe v. Wade,* 410 US 113, 125, 93 S Ct 705, 35 L Ed 2d 147 (1973), and also because—at least arguably—a determination that Stout was ineligible would mean that his high school might have to forfeit games in which he played. *See also Whipple v. OSAA,* 52 Or App 419, 629 P2d 384, *rev den* 291 Or 504 (1981).

Executive Board existed. For all that appears in the record, Ryan's letter could have been issued at the behest of OSAA's board. It was appropriate for the Superintendent to treat Ryan's letter as the requisite "conclusive eligibility ruling."

We turn now to the far more difficult problem of the Superintendent's authority to invalidate OSAA's ruling in this case. The Superintendent first takes the position that he has jurisdiction over the subject of student activities based on his general statutory authority and that his ruling therefore controls over any contrary decision of OSAA.

OSAA is a voluntary association. *Cooper v. OSAA,* 52 Or App 425, 629 P2d 386, *rev den* 291 Or 504 (1981). The members of OSAA are described in its constitution as "high schools within the State of Oregon" that meet certain qualifications. At least so far as is pertinent in this case, such high schools and the various districts that operate them are also governed by the State Board of Education, which is given general authority to operate and maintain the statewide school system. *See* ORS 326.051. The State Board administers its functions through the Department of Education, the executive head of which is the Superintendent. ORS 326.111, 326.310.

By statute, all administrative functions relating to the supervision, management and control of schools is to be exercised by the Department unless conferred by law on some other agency. ORS 326.111(3). District school boards may establish rules for the governance of schools and pupils only so long as those rules are consistent with rules of the State Board. ORS 332.107. Specific authority to adopt rules regarding school and interschool activities is conferred on the State Board. ORS 326.051(1)(d).[2] From the foregoing general propositions, which are unassailable, the Superintendent offers the following analysis:

---

[2] ORS 326.051 (1) provides, in relevant part:

"In addition to such other duties as are prescribed by law and pursuant to the requirement of ORS 183.310 to 183.550, the State Board of Education shall:

"* * * * *

"(d) Adopt rules regarding school and interschool activities. Such rules shall provide that no public elementary or secondary school shall discriminate as to sex, race, marital status, religion or national origin in determining participation in interschool activities. Discrimination is as defined in ORS 659.150."

"Prior to 1983 OSAA acted to adjudicate eligibility determinations as a result of its contract with the various member schools. Obviously, however, the implementation of those adjudications, the actual exclusion of the student from athletic participation, was made by the school or district itself. By passage of SB 351 (Oregon Laws 1983, ch 823 * * *), the legislature indicated dissatisfaction with that process and required the Department to make final determinations.

"A school board, whether state or local, has only the authority granted to it by statute. *Monaghan v. School District No. 1,* 211 Or 360, 315 P2d 797 (1957); *Neuhaus v. Federico,* 12 Or App 314, 505 P2d 939 (1973).

"In this case OSAA complains that the Superintendent has failed to follow OSAA's rules regarding eligibility for athletics. The problem with this contention is obvious. OSAA has no authority to impose its rules on the State Board, the Department or the Superintendent. No one questions the right of OSAA member districts to band together and grant OSAA authority to make preliminary determinations regarding eligibility. OSAA's status, however, is that of an agent for its members. *Cooper v. OSAA,* 52 Or App at 429. The districts cannot grant to OSAA more power than they themselves have by statute. To find the contrary would be the functional equivalent of the Army allowing a group of privates to join together and assert authority over their commanding officer or allowing students to expand or contract a school administrator's authority by vote. *Cf. Neuhaus v. Federico, [supra].*

"In the instant case the power to make rules governing school and interschool activities is given to the State Board, not local districts or individual high schools. ORS 326.051(1)(d).

"The only relevant statutory reference to voluntary organizations in the education chapters is ORS 332.075(6) which authorizes local districts to be members of and pay fees to 'any voluntary organization that administers interschool activities or that facilitates the scheduling and programming of interschool activities.' This statute obviously does not contain any grant of authority to the districts or such voluntary organizations to bind the State Board, the Department, or the Superintendent.

"In its temporary rule the Department has given OSAA the right to make what are termed 'final determinations' in regard to athletic eligibility. OAR 581-21-035(1). That such determinations are not really 'final' is inherent in the rule itself since the rule is a description of the procedure for

appealing from such determinations to the Superintendent.[2] The rule, in turn, was required by Or Laws 1983, ch 823, § 4. If the legislature had intended to confer any 'authority' on OSAA it presumably would have done so in this statute. It did not.

---

"2   It is highly unlikely that, even if it had chosen to do so, the Department could have lawfully delegated to OSAA any binding authority. *Stringham et al v. Union Co. PUD et al,* 182 Or 565, 178 P2d 698, 187 P2d 150 (1948); *see also Oster v. Pine Eagle School Dist.,* 40 Or App 265, 594 P2d 1296 (1979); *Peterson v. Multnomah County School District No. 1,* 64 Or App 81, 668 P2d 385 (1983)." (Other footnotes omitted.)

"Thus, the Department has chosen to permit OSAA to make preliminary eligibility decisions. It may have done so to reduce the numbers of hearings that the Superintendent would have to conduct. This was done not because the Superintendent had to do so as a result of any power on OSAA's part to bind him, but rather because he chose to do so.

"Allowing participation by OSAA in the eligibility decision making process is a matter of convenience on the part of the State Board, the Department and the Superintendent. OSAA lacks authority to bind the Superintendent by its rules for self-governance. As a result, the fact, asserted by OSAA's second assignment of error, that the Superintendent did not decide the student's eligibility in accordance with OSAA's rules, is not error and does not require reversal.

The Superintendent's argument proves too much. If he, acting on behalf of the State Board, has always had the plenary authority over eligibility decisions that he now asserts, he has never seen fit to exercise it. Because there have been no pertinent rules promulgated under ORS 326.051(1)(d), whether the Superintendent had the authority, or only achieved it by virtue of enactment of Or Laws 1983, ch 823, is academic. Whether the statute is viewed as new authority, or only a legislative substitute for the failure to exercise old authority, our analytical task is the same: to determine what Or Laws 1983, ch 823 means. In doing so, it is useful to place the statute in its historical context—a context provided by decisions of this court.

In *Josephine Co. Sch. Dist. v. OSAA,* 15 Or App 185, 189, 515 P2d 431 (1973), we reviewed the general rule that

courts will not interfere with a voluntary association's determinations regarding violations of its rules. The case involved a trial court's review of an OSAA decision that a student had not established "residence," as that term was defined in OSAA's constitution and bylaws. 15 Or App at 190. We concluded that the trial court erred in undertaking a *de novo* review of the facts. 15 Or App at 192.

More recently, in *Cooper v. OSAA, supra,* we considered the question of whether OSAA's rules regarding transfer between private and public schools violated the petitioner's statutory and constitutional rights. We first noted:

> "[T]he contractual agreement between the school districts and OSAA confers authority on OSAA to operate as an agent for the member schools. Therefore, OSAA may enforce the rules which the member schools, acting through OSAA, adopt. By the same token, OSAA is subject to statutory and administrative rules which regulate school districts." 52 Or App at 429.

Although, in *Cooper,* we criticized OSAA's transfer rules as overly broad and inequitable, 52 Or App at 438, we concluded that the rules were not invalid on any of the statutory or constitutional bases urged by the petitioners. 52 Or App at 440.

The *Cooper* decision provided the stimulus for the submission of legislation, SB 351, aimed at altering certain aspects of OSAA's regulation of interscholastic activities. Hearings on SB 351, Senate Committee on Education, March 24, 1983. (Tape 36, Side A, Nos. 033-088.) It is the scope of those changes that is the final issue in this case. SB 351 was enacted as Or Laws 1983, ch 823. Section 2 of that act (ORS 339.450) provides:

> "No school, school district or association, whether public or private, shall deny any grade or high school student the right to participate in interscholastic athletics *solely on the ground that the student transferred between schools or participated in athletics at another school.*" (Emphasis supplied.)

Section 4 (not *codified*) provides, in relevant part:

> "On or before September 1, 1983, the State Board of Education shall adopt rules to implement ORS 326.051 (1)(d), including but not limited to:

"(1)   Appeals procedures for denials or delays in eligibility; * * *"

It was pursuant to rules promulgated under section 4(1) of the act that the Superintendent entered the order under review here.

As noted, OSAA is the private organization that controls interscholastic athletics in Oregon. The rule at issue, OSAA Rule 8-6-3, provides, in relevant part:

"A student who transfers from any high school to any member high school in whose attendance area the student's parents do not reside becomes ineligible until one calendar year after the student first attends the new school. For purposes of this Rule, a student is deemed to have transferred from another high school if at any previous time the student registered and attended classes at, or participated in any way in athletics at another high school.

"* * * * *

"(2)   A student does not lose eligibility when the student moves (a) with the student's parents, or (b) with a person who prior to their move was the student's legal guardian and lived with the student, or (c) as a result of being a ward of a court.

"A move as referred to in parts (a), (b) and (c) of this subsection (2), can be either from within one high school attendance area of a school district to another high school attendance area of the same school district (as established by the district's school board), or outside to within the district of the student's new school.

"For purposes of this Rule, a 'district' is any public high school district (including unified or similar districts) established under Oregon law, and the 'district' of a private school is the district in which it is located, or if it is not located in a district as defined herein, any Oregon public school district (including non-high school districts) in which it is located.

"For purposes of this Rule, the student and the student's parents or guardian 'move' when they establish a joint residence for all purposes, with the intent to reside there indefinitely and terminate all occupancy of their previous residence."

According to OSAA, the purpose of the rule is to preserve harmony among member schools and school districts by preventing not only actual proselytising, professionalism or participation by other than regular students in good standing, but also conduct or circumstances which may give rise to

the appearance of those acts. The rule, in turn, is predicated on OSAA's interpretation of the scope of authority left to it by Or Laws 1983, ch 823 (*codified* as ORS 339.450), an interpretation at odds with the Superintendent's understanding of the same provision.

The Superintendent argues that the legislative history of Oregon Laws 1983, chapter 823, sections 2 and 4, demonstrates that the legislature intended to prohibit the kind of *per se* transfer ineligibility rule that gave rise to *Cooper*. In his view, OSAA Rule 8-6-3 is just such a rule. He contends that, in order to impose the ineligibility sanction, OSAA must show that recruitment, which is the specific kind of behavior justifying the rule, has occurred. Understandably, OSAA urges a more limited interpretation of the statute. First, it asserts that the statutory term "solely" is an "exact term" under *Springfield Education Assn. v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980), *i.e.*, one "which impart[s] relatively precise meaning, *e.g.*, 21 years of age, male, 30 days, Class II farmland, rodent, Marion County." Alternatively, OSAA argues that the language of the statute and its legislative history support the conclusion that OSAA's rule is permissible under the statute in any event.

■  As a threshold matter, we conclude that the statutory term "solely" is not necessarily and always an exact term under *Springfield*. It admits of varying interpretations, the content of which "will depend upon what the user intended to communicate or accomplish by use of the word." *Springfield Education Assn., supra,* 290 Or at 224.[3] We therefore turn to

---

[3] For example, in *Ogden v. Bureau of Labor,* 68 Or App 235, 682 P2d 802, *rev allowed* 297 Or 781 (1984), this court interpreted ORS 659.015, which provides:

> "It is declared to be the public policy of Oregon that available manpower should be utilized to the fullest extent possible. To this end the abilities of an individual, and not any arbitrary standards which discriminate against an individual *solely* because of his age, should be the measure of the individual's fitness and qualification for employment." (Emphasis supplied.)

In *Ogden,* the petitioner asserted that the use of the term "solely" in ORS 659.015 demonstrated a legislative purpose to allow consideration of age as a hiring criterion, if at least one other factor could be identified in the decision not to hire. 68 Or App at 235. The majority disagreed:

> "[W]hen one considers the context in which the word 'solely' appears * * * it is apparent that the dissent [which urged that 'solely' means 'to the exclusion of alternate or competing things' 68 Or App at 251] cannot be correct.' " 68 Or App at 243.

an examination of the legislative history of the statute.

Although SB 351 was introduced largely as a result of the *Cooper* decision, the specific problems that gave rise to *Cooper*—OSAA's rules regarding the eligibility of students transferring from public to private schools—were cured internally by OSAA before the passage of the bill. Hearings on SB 351, Senate Committee on Education, April 7, 1983.[4] (Tape 45, Side A, Nos. 364-395.) However, the bill's proponent urged that OSAA's response to the *Cooper*-type problem was, in his view, typical of OSAA in that it responded to issues only when and to the precise extent it was forced to do so. He therefore encouraged the Senate Committee considering the bill to approve the legislation. Hearings on SB 351, Senate Committee on Education, April 7, 1983. (Tape 45, Side A, No. 395; Tape 44, Side B, Nos. 025-066.)

It is clear that that proponent of SB 351 thought that the bill mandated a fact-finding process that would focus on the question of recruitment. He initially stated that "[t]he bill had been phrased" so that "the blanket rule [would be] replaced with a rule that permitted students to transfer and participate, unless there was some question raised in an individual case that the transfer had occurred for an athletic reason." Hearings on SB 351, Senate Committee on Education, March 24, 1983. (Tape 36, Side A, Nos. 106-121.) However, irrespective of what the bill's proponent testified that he believed that the bill provides, there was no clear consensus, in the Senate or House committees that considered it, on that question.

---

We concluded:

"[T]he legislature meant to prohibit age as a determining factor in an employer's decision to hire a particular applicant even when other factors are considered. * * * The critical issue is whether, in petitioner's decision not to hire, age made a difference." 68 Or App at 244-45.

[4] OSAA Rule 8-6-7 now provides:

"A student does not lose eligibility when the student transfers for the first time to or from a private high school without a move in residence, to which rule 8-6-3 is applicable, provided the transfer is between school years and is approved by the sending principal. The approval shall be in writing and filed with the Executive Director before the student participates in athletics at the receiving school. This rule shall not apply to any transfer to a public school located outside the school district where the student resides with a parent or legal guardian."

In a work session of the Senate Committee on Education, Senator Monroe inquired of the committee's legal counsel whether the proposed legislation would allow OSAA to deny eligibility to a student if the transfer were for athletic reasons. Counsel responded:

"Athletic reasons would be a reasonable ground under the bill for denying eligibility. The bill only addresses transfers alone—unspecified, unconditional—just transfers alone as the sole reason." Hearings on S.B. 351, Senate Committee on Education, April 7, 1983. (Tape 44, Side B, No. 044.)

In the hearings on SB 351 before the House Committee on the Judiciary, Representative Scavera stated:

"I read * * * § 2 as simply saying: 'For this sole reason * * * if you transfer between schools, you cannot engage in sports— you can't make a rule like that, or if you participate in sports [and you transfer] you cannot * * * engage in sports.' That's all Section 2 says[:] you can't write rules to that effect."

That committee's counsel responded:

"I tend to agree with Representative Scavera's interpretation that all this does is—[say] that you cannot have as a sole grounds [sic] for disqualification the fact that someone transferred or the fact that they participated in athletics at other schools. Beyond that you can have any rules you like." Hearings on S. B. 351, House Committee on Judiciary, July 12, 1983. (Tape 544, Side A, Nos. 207-265.)

The Supreme Court is of the view that statements of committee members who had the responsibility for approving a measure are relevant legislative history for determining the intent of the bill. *State ex rel Cox v. Davidson Industries, Inc.,* 291 Or 839, 844, 635 P2d 630 (1981); *Jones v. Wallace,* 291 Or 11, 17, 628 P2d 388 (1981). It is clear, however, that the committees that considered SB 351 had different understandings as to what the bill would accomplish. Arguably, both the proponent of the bill as well as the Senate Committee on Education intended that, in order to impose the sanction of ineligibility, section 2 would require OSAA to demonstrate that recruitment had occurred. However, that interpretation is not what the ordinary meaning of the language of the statute conveys, and that is not what the House Judiciary

Committee thought that the language conveyed.[5]

■ ■    In the absence of clear legislative intent to the contrary, this court must give the words of a statute their natural and ordinary meaning. *Wimer v. Miller,* 235 Or 25, 30, 383 P2d 1005 (1963). The ordinary meaning of "solely" would not inhibit OSAA's ruling here, because requiring that the student live with a parent or legal guardian adds an additional consideration to the criterion of transfer.

■ ■    An example of a rule that would violate the statute would be one declaring a student who had transferred between schools ineligible because of the transfer and regardless of whether his parents had also moved. Similarly, the statute forbids making a student ineligible to participate in athletics at a new school for a period of time, or at all, by virtue of the single fact that he formerly participated at another school. Insistence that the student live in the same district in which a

---

[5] During the work session at which the House Committee on the Judiciary passed SB 351 to the floor with a "do pass" recommendation, the committee discussed the specific question of whether residency of a student's parents was a permissible condition of eligibility under the bill:

"*Counsel to the OSAA:* 'Mr. Chairman, during the break, a question came up that I think is probably important in determining * * * what the intent of the committee is, with respect to § 2. I was talking with Mr. Hall regarding whether it is the intent of the Committee that if § 2 is passed that an association, such as the OSAA, would have the right to pass a rule saying that a student must live in the district in which his parents reside in order to compete in athletics—so that, in other words, if the student moves out of the district in which his parents reside, that is something in addition to transfer as the sole basis for his being prohibited from participating—I'd just like to ask whether it is the intention of the Committee that that be a type of additional rule that would be appropriate?'

"*Chairman Rutherford:* 'As the maker of this motion, Representative Miller, did you understand the question?'

"*Rep. Miller:* 'I understand the question. Now, I've got to figure out if I can understand the answer.'

"*Rep. Scavera:* 'Mr. Chair, I certainly understand § 2 as not prohibiting that. I'm voting on this bill based upon that there's no prohibition against a school district or association from putting such a regulation into effect.'

"*Chairman Rutherford:* 'Is that the sense of the Committee?'

"[Unclear whether Rep. Smith or Rep. Miller]: 'I think I'd go along with that, too.'

"*Chairman Rutherford:* 'Okay, there's no expression of opposition.'

"[Unclear, possibly Rep. Smith]: 'I think that's an additional element above and beyond the sole transfer * * *'." Hearings on S.B. 351, House Committee on the Judiciary, July 12, 1983. (Tape 546, Side A, Nos. 025-048.)

parent lives has an obvious relationship with the possibility of recruitment. It therefore is not a sham or pretense that the Superintendent was entitled to ignore in determining whether OSAA's ruling was based "solely" on transfer. In ignoring it, he erred.

Reversed.