Argued and submitted March 15; resubmitted In Banc July 14, affirmed August 25,
reconsideration denied November 10, 1993, petition for review allowed
February 22, 1994 (318 Or ____)

In the Matter of the Compensation of
Jerry B. Mathel, Claimant.

Jerry B. MATHEL,
*Petitioner,*

*v.*

JOSEPHINE COUNTY,
*Respondent.*

(WCB 90-18752; CA A76236)

858 P2d 450

Karsten H. Rassmussen, Eugene, argued the cause for petitioner. With him on the brief was Michael M. Bruce, Eugene.

Michael G. Bostwick, Portland, argued the cause for respondent. With him on the brief was Davis & Bostwick, Portland.

WARREN, J.

Deits, J., dissenting.

## WARREN, J.

Claimant seeks review of a Workers' Compensation Board order that upheld employer's denial of his claim for myocardial infarction. We write only to address claimant's argument that 1990 changes to the occupational disease law affect the compensability of his claim, and affirm.

Claimant had hypertension, which had been under control for many years. On August 23, 1990, after experiencing two days of abnormally high emotional stress at his employment with employer, he suffered a myocardial infarction. Employer denied his claim for compensation. The Board, following our decision in *SAIF v. Hukari*, 113 Or App 475, 833 P2d 1307, *rev den* 314 Or 391 (1992), upheld the denial. In *Hukari*, we held that, under the 1987 amendments to the workers' compensation law, any claim that a condition is independently compensable because it was caused by on-the-job stress must be treated as a claim for a mental disorder under the occupational disease provisions of ORS 656.802. A mental disorder is not compensable unless, *inter alia*, "there is a diagnosis of a mental or emotional disorder which is generally recognized in the medical or psychological community." ORS 656.802(3) (*formerly* ORS 657.802(2)). It is undisputed that claimant does not have a diagnosed mental disorder, and therefore the Board concluded that his claim is not compensable.

The 1987 formulation of ORS 656.802 provided, in part:

"(1) As used in this chapter, 'occupational disease' means:

"(a) Any disease or infection arising out of and in the course of employment caused by ingestion of, absorption of, inhalation of or contact with dust, fumes, vapors, gasses, radiation or other conditions or substances to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein, and which requires medical services or results in disability or death.

"(b) Any mental disorder arising out of and in the course of employment and which requires medical services or results in physical or mental disability or death.

"(c)   Any series of traumatic events or occurrences arising out of and in the course of employment which requires medical services or results in physical disability or death."

In 1990, the legislature amended that statute by moving the language emphasized below from paragraph (1)(a) into subsection (1) and adding "caused by," "or activities," and "including." ORS 656.802(1) now provides, in part:

"(1)   As used in this chapter, 'occupational disease' means *any disease or infection arising out of and in the course of employment* caused by *substances* or activities *to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein, and which requires medical services or results in disability or death*, including:

"(a)   Any disease or infection caused by ingestion of, absorption of, inhalation of or contact with dust, fumes, vapors, gases, radiation or other substances.

"(b)   Any mental disorder which requires medical services or results in physical or mental disability or death.

"(c)   Any series of *traumatic events or occurrences* which requires medical services or results in physical disability or death." (Emphasis supplied.)

Claimant asserts that, under the new definition, his claim is compensable, because his work activities caused his heart attack.

The 1987 version of the statute listed three types of claims that were occupational diseases. ORS 656.802 (1)(a)-(c). ORS 656.802(1), as amended in 1990, may have been intended to expand that definition to include conditions that do not fit within one of the three listed categories of claims. However, the amendments did not change the mental disorder provisions or the determination in *Hukari* that any claim that a condition is caused by on-the-job stress must be considered a claim for mental disorder under ORS 656.802. Claims for mental disorders continue to be subject to the requirements of ORS 656.802(3). Thus, because claimant seeks compensation for myocardial infarction caused by on-the-job stress, that is a claim for mental disorder under ORS 656.802. Claimant does not have a diagnosed mental condition and, therefore, his claim is not compensable. ORS 656.802(3).

We have considered and reject claimant's other arguments.

Affirmed.

**DEITS, J.,** dissenting.

I agree with the majority that our decision in *SAIF v. Hukari*, 113 Or App 475, 833 P2d 1307, *rev den* 314 Or 391 (1992), is controlling in this case. *Hukari* holds that any claim that a condition is independently compensable because it is caused by on-the-job stress must be considered as a claim for a mental disorder under the occupational disease statute, ORS 656.802. Because a heart attack cannot qualify as a mental disorder, under *Hukari*, claimant loses even if his condition was caused by on-the-job stress.

However, after reviewing our holding in *Hukari*, I now believe that our decision in that case was incorrect and that we should overrule it. I recognize the value of *stare decisis*. However, the rule of *stare decisis* has never prevented Oregon appellate courts from reversing precedent that was "inadequately considered or wrong when it was decided." *See Heino v. Harper*, 306 Or 347, 373, 759 P2d 253 (1988). The role of *stare decisis* in upholding precedents involving the construction of a statute is perhaps unique, because the court's interpretation becomes a part of the statute subject to change by the legislature. *State v. White*, 303 Or 333, 736 P2d 552 (1987). However, I do not believe that *stare decisis* prevents us from reconsidering a recent and, in my view, wrongly decided case, even if it involves the construction of a statute. In circumstances such as these, where we may have made an error that has a significant impact on the application of the law, I believe that we should acknowledge the error and overrule the earlier decision.

In *Hukari*, we held that, under the 1987 amendments to the workers' compensation law, any claim that a condition is independently compensable because it was caused by on-the-job stress must be treated as a claim for a mental disorder under the occupational disease provisions of ORS 656.802. A mental disorder is not compensable unless, *inter alia*, "there is a diagnosis of a mental or emotional disorder which is generally recognized in the medical or psychological community." ORS 656.802(3) (*formerly* ORS

656.802(2)). Because physical disorders, such as heart attacks, are not "mental disorders," such physical conditions can never be compensable under *former* ORS 656.802(2).

The relevant statute, *former* ORS 656.802, provided in pertinent part:

"(1)   As used in this chapter, "occupational disease" means:

"* * * * *

"(b)   Any mental disorder arising out of and in the course of employment and which requires medical services or results in physical or mental disability or death.

"* * * * *

"(2)   Notwithstanding any other provision of this chapter, a mental disorder is not compensable under this chapter:

"(a)   Unless the employment conditions producing the mental disorder exist in a real and objective sense.

"(b)   Unless the employment conditions producing the mental disorder are conditions other than conditions generally inherent in every working situation or reasonable disciplinary, corrective or job performance evaluation actions by the employer, or cessation of employment.

"(c)   Unless there is a diagnosis of a mental or emotional disorder which is generally recognized in the medical or psychological community.

"(d)   Unless there is clear and convincing evidence that the mental disorder arose out of and in the course of employment."

In *Hukari*, this court interpreted the 1987 amendments to ORS 656.802. We determined that the "legislature's use of the term 'mental disorder' was intended to encompass all claims for mental or physical disorders arising from job stress." 113 Or App at 480. In construing a statute, legislative intent is evidenced most persuasively by the words used in a statute and absent *clear* legislative intent to the contrary, this court must give the words of a statute their natural and ordinary meaning. *OSAA v. Stout*, 71 Or App 405, 416, 692 P2d 633 (1984). In *Hukari*, we departed from that principle because our reading of the term "mental disorder" is not consistent with its natural and ordinary meaning. The ordinary meaning of the term "mental disorder" does not include

a physical disorder, as opposed to physical manifestations of a mental disorder, *i.e.* fatigue caused by depression. There is nothing in the language of the statute that indicates that the term "mental disorder" was used in other than its ordinary sense. Further, there is nothing in the legislative history that clearly supports our interpretation of "mental disorder" in *Hukari*. Eliminating claims for physical disorders caused by job stress is a significant change in the law. It would seem that, if the legislature intended to do away with such claims, it would have done so explicitly or there would have been something in the legislative history to show that was what they intended.

We reasoned in *Hukari* that, because "[a]ll claims involving disabilities that were the result of work-caused stress, regardless of whether the manifestations were psychological or physical, were subject to the same compensability analysis," the legislature must have intended that all stress-caused claims are compensable only if they meet the requirements of *former* ORS 656.802(2). 113 Or App at 479. However, *former* ORS 656.802(2) specifically refers to "mental disorders"; it does not refer to physical disorders. The fact that before the statute was amended, claims for physical disorders and mental disorders caused by stress were subject to the same compensability analysis does not compel the conclusion that they are to be treated the same under the amended statute, particularly when the amended statute does not say that.

There are logical reasons for analyzing claims for mental disorders different from claims for physical disorders. Claims for mental disorders and resulting physical symptoms are harder for an employer to "disprove." In other words, the legislature's concern could have been the type of injury alleged, rather than the cause of the injury. There is support for this distinction in the legislative history of this amendment. The original version of the proposed amendment to ORS 656.802 provided that an occupational disease included:

> "(b) Any mental disorder arising out of and in the course of employment [caused by psychological stress or physical trauma] and which requires medical services or results in physical or mental disability or death."

That version of the amendment showed that the legislature was concerned with the compensability of *all* claims for *mental disorders*, not just mental disorders caused by stress.

It does not support the conclusion that the legislature intended by the use of the term "mental disorder" to encompass all claims for physical disorders caused by on-the-job stress. If it did, *physical disorders* caused by *physical trauma* would have been subject to *former* ORS 656.802(2). Additionally, during the discussions of this amendment, legislators cited as examples of claimants subject to the new requirements those who suffer a "breakdown" as the result of stress. The legislature did not mention claims in which stress is alleged to have caused a purely physical condition, such as a heart attack or a stroke, except to note erroneously that such claims were not compensable. That misstatement also suggests that the legislature did not intend by its use of the term "mental disorder" to include physical disorders caused by on-the-job stress. Additionally, the legislators debated whether psychologists should be allowed to treat claimant's with mental disorders and authorize time loss. An important consideration for the legislators was whether psychologists and psychiatrists used the same diagnostic criteria to define a mental disorder. Representative Hill asked at least two different "experts" to define a mental disorder and he asked whether it differed from an emotional disorder.

*Hukari's* definition of a mental disorder abolishes any claim for a physical condition caused by on-the-job stress. This results from the requirements in *former* ORS 656.802(2)(c) and ORS 656.802(3)(c) that a mental disorder must be generally recognized in the medical or psychological community before it is compensable. As the claimant in this case will soon discover, he loses, because his physical disorder, a heart attack, is not a mental disorder generally recognized by the psychological community. In its adoption of this legislation, the legislature was attempting to place limits on claims for mental disorders. However, there is little support in either the language of the statute or in the legislative history that the legislators intended to abolish claims for physical disorders caused by stress absent a diagnosed mental disorder. I would overrule *Hukari* and hold that the mental disorder provisions of ORS 656.802 do not apply to claims for physical disorders allegedly caused by on-the-job stress.

Accordingly, I dissent.