Butler, J.
This action arises from a decision by the defendant, Massachusetts Interscholastic Athletic denying the plaintiff Rafael Ruiz (Ruiz) a waiver to participate in varsity basketball at Canton High School. The plaintiff subsequently appealed the decision to the Eligibility Review Board (ERB) which affirmed the MIAA decision. The plaintiff now asks that this court grant plaintiff injunctive relief to participate in varsity basketball for the remainder of the season.

BACKGROUND

Ruiz, lives with his mother, father, and older sister in Canton.[2] He attended elementary school in Canton in grades 5 and middle school in grades 6, 7 and 8. He is now a junior at Canton High School. Ruiz enrolled in Thayer Academy on a scholarship for his freshman and sophomore years, where he played on the varsity basketball team. At Thayer Academy, Ruiz received basketball awards and averaged 15 points per game.
Because Ruiz was unable to meet the academic requirements of Thayer Academy, he was not invited back on scholarship for his junior year. In June 1999, Ruiz met with a guidance counselor at Canton High School to let her know that he would be leaving Thayer Academy and returning to the Canton public schools. Under the MIAA rules, a student who transfers from one school to another may not play athletics for one year. Ruiz applied for a waiver of the transfer rule under Rule 87 of the MIAA Rules and Regulations on June 24, 1999. Due to inadvertence, the application was not forwarded at that time by the Canton School system, but it was submitted eventually in a timely fashion. The MIAA denied the waiver request. Ruiz subsequently appealed this decision to the Eligibility Review Board (ERB). On December 23, 1999, the ERB also denied the request.

DISCUSSION

In determining whether to grant a preliminary injunction, this court considers the balancing test set forth in Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). See also Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990). First, the court must evaluate, “the moving party’s claim of injury and its chance of success on the merits.” Id. at 617. If failing to issue the injunction “would subject the moving party to a substantial risk of irreparable harm, this court must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party.” Id. When the balance of hardship measured in light of legal merits cuts in favor of the moving party, it is entitled to a preliminary injunction. Id. at 617.

Likelihood of Success on the Merits

Ruiz is likely to prevail in establishing that the MIAA rule concerning ineligibility is not applicable as a matter of law to his involuntary transfer from a private school back into the public school system of his hometown.
The MIAA rule governing transfers (Rule 59.1) states, in relevant part, that:
A student who transfers from any school to an MIAA member high school is ineligible to participate in any interscholastic athletic contest at any level for a period of one year in all sports in which that student participated at the varsity level or its equivalent during the one year period immediately pre *650 ceding the transfer (except as exempted below). For the purpose of this rule, no transfer will be deemed to have taken place if a student returns to his/her former school on or before the eleventh school day from the date of the last attendance there.
There are certain automatic exceptions to this rule:
59.6 Exemptions to the transfer rule — eligible immediately provided that all other eligibility requirements are met:
59.6.1 Change of residence of a student’s parents: A student’s transfer is necessitated by a change of residence of his/her parent(s) to the area served by the school to which he/she transfers. (This exception does not apply to a change in custody, guardianship, or to a student’s change in residence from one parent to another, nor does it apply when the student could reasonably continue to attend the former school.)
5 9.6.2 Junior high/middle school transfer: A student who enters the ninth grade of a four-year high school and who has not been enrolled previously enrolled in the ninth grade. A student who enters the tenth grade of a three-year high school and who has not been previously enrolled in the tenth grade.
59.6.3 Elementary/Junior High/Middle School graduate: A student who has completed the last grade available in the school previously attended.
59.6.4 Closed school: If a school no longer exists, a student in attendance may be eligible at the school of his/her choice immediately after the closing of that school.
In addition, an athlete may obtain a waiver of the rule upon an application presented by the “new” receiving school system:
87.2 The MIAA Executive Director or his/her des-ignee shall have the authority to set aside the effect of any eligibility rule upon an individual student if (1) the rule fails to accomplish the purpose for which it is intended, (2) the rule works an undue hardship on the student, (3) granting the waiver will not cause an unfair competitive advantage, and (4) granting the waiver will not displace another student-athlete.
87.5 Adverse decisions of the ERB may be appealed by the student’s principal for a hearing before a subcommittee of the Massachusetts Inter scholastic Athletic Council (MIAC). All appeals before the ERB or the MIAC must be presented in person by the high school principal/assistant principal after having been endorsed by the superintendent. Appeals of ERB decision must be filed in writing with Executive Director within seven school student, parents or guardians, or other representatives may appear in person before the ERB and MIAC. The four standards which must be addressed in an appeal before the Board or Council are:
87.5.1. The rule works an undue hardship on the student; and
87.5.2. Granting the waiver will not result in an unfair competitive advantage; and
87.5.3. The waiver approval would not cause displacement of another student-athlete from the appellant’s own team; and
87.5.4. The waiver would not be in conflict with the general well-being of MIAA interscholastic athletic objectives.
To understand the issues presented in this particular case, it is important to note the purpose of the ineligibility rule. The defendant’s own brief clarifies the purpose of the rule mandating ineligibility following transfer: it “is designed to prevent ‘forum shopping' by the students as well as to prevent recruiting by the receiving school.” (Defendant’s brief pp. 4-5.) Although all states have rules dealing with the eligibility of a student who transfers from one school to another, the Massachusetts rule appears particularly overbroad.[3] Specifically, the Massachusetts rule fails to provide an exemption when the student’s reason for changing schools has nothing to do with athletics.[4] In the present case, Ruiz was forced to leave Thayer Academy due to the withdrawal of his scholarship. His attendance at the public high school in Canton, where his family lives, has nothing to do with athletics; it was neither “forum shopping” by Ruiz, nor recruitment by the Canton public schools.
The Legislature has settled in each child a right to attend school. Massachusetts G.L.c. 76, §5 provides that, “Every person shall have a right to attend the public schools of the town where he actually resides . . . No person shall be excluded from or discriminated against in admission to a public school of any town, or in obtaining the advantages, privileges and courses of study of such public school . . .” Not only does a child have a right to attend public school, but he and his parents or guardians have a commensurate obligation to send the child to school. Under G.L.c. 76, §1, “Every child between the minimum and maximum ages established for school attendance by the board of education . . . shall . . . attend a public day school in said town.”
The legislature recognizes the value of an education comprised of academic as well as athletic and artistic pursuits. In Massachusetts the education is broad, and it includes physical education. “... [S]chools shall . . . give instruction and training in orthography, reading, writing, the English language and grammar, geography, arithmetic, drawing, music, the history and constitution of the United States, the duties of citizenship, health education, physical education and good behavior. Instruction in health education shall include, but shall not be limited to: consumer health, ecology, community health, body structure and function, safety, nutrition, fitness and body dynamics, dental health, emotional development, and training in *651 the administration of first aid . . G.L.c. 71, §1. Guaranteed as part of the public school curriculum, “[physical education shall be taught as a required subject in all grades for all students in the public schools for the purpose of promoting the physical well-being of such students.” G.L.c. 71, §3. The taxes imposed on the constituents of each district fund different programs within the public schools. Public school students are entitled to participate in the various activities, including varsity athletics, which are funded in this manner.[5] The legislature therefore expresses as public policy the view that athletics constitute an integral component of public education and should be considered a fundamental ingredient of the educational experience.

Irreparable Harm

Whether Ruiz would be irreparably harmed is a matter of some debate. Certainly, he cannot relive the experiences of unplayed basketball games. Young athletes are and should be resilient, able to accept setbacks on and off the playing field and get on with life.
In the sense that no money damages are available, however, injunctive relief is appropriate where the case is viable on the merits.
In terms of the public policy, this court, like most others, disfavors resort to the Courts to settle school athletic matters. Money and time spent on litigation of this type is usually better spent elsewhere. However, where an individual has or is likely to suffer harm because of a misapplication of a law or rule, it is appropriate to provide redress through the judicial process.
Accordingly, the decision of the MIAA and its ERB is vacated. Interpreting the MIAA rules concerning transfers, the MIAA should have granted Ruiz an automatic exemption from the rule, as his return to the Canton School system was most akin to Rule 59.6.1 or Rule 59.6.4.

ORDER

The matter is remanded to the MIAA for further consideration in light of the Court’s opinion.

 Rafael’s sister graduated from Canton High School in 1997.

 For instance, the Indiana rule establishes that the Indiana High School Athletic Association (IHSAA) has authority to set aside the effect of any rule when: “a. Strict enforcement of the Rule in the particular case will not serve to accomplish the purpose of the Rule; b. The spirit of the Rule has not been violated; and c. There exists in the particular case circumstances where an undue hardship which would result from enforcement of the Rule.” Indiana High School Athletic Assoc. v. Avant, 650 N.E.2d 1164, 1168 (1995). In Oregon, the Oregon Student Activities Association (OSAA) provides an exception under Rule 20-6-3 which allows students who transfer back to their home district to do so without losing eligibility. Cooper v. Oregon Student Activities Assoc., 52 Or.App. 425, 435, 629 P.2d 386, 393 (1981).

 This could be seen as an oversight, however. The section banning recruitment of athletes by member schools reads as follows:
47. Recruitment
47.1. To maintain a proper relationship between the academic purpose of schools and their athletic programs, all members of the MIAA must refrain from recruitment, inducement, or other forms of persuasion which would encourage a student to enroll in or transfer to a school for athletic purposes.
47.3. Any attempt to place a student in a member school by any person for the purposes of enhancement of that student’s athletic development, or for increased exposure, shall be deemed to be recruitment.

 Massachusetts G.L.c. 71, §47 provides that “Expenditures by the committee for the organization and conduct of physical education, athletics, sports, games and play... and for the employment of experienced athletic directors to supervise said physical education, athletics, sports, games and play, shall be deemed to be for a school purpose.”